# Woodroof, *et al. v.* Hundley.

*Bill for Construction of Will.*

(Decided June 30, 1905. 39 So. Rep. 907.)

1. *Wills; Construction; Lapsed Legacies; Effect.*—Testatrix provided for two legacies of $1,000 each, but the legatees died during life time of testatrix, the will provided further, that

"all the balance of money now on hand (I mean gold and silver coin, and currency) and of which I die possessed, after the payment of the legacies mentioned herein, I bequeath ****; Held that the legacies lapsed and fell into general residium of the state.

2. *Charities; Construction; Trustees.*—The fact that the beneficiaries of a permanent charity created by will were left to the selection of the trustees named in the will, does not limit the charity to the lifetime of such trustees, as the exercise of the power of selection would appertain to the office of trustee whether filled by the appointment of the court or by selection of the testatrix, there being no real interregnum in the office of any trust.

3. *Same; Permanency.*—When real estate is devised to trustees to apply the rents, incomes and profits to such objects of charity as might be designated by another, and conditioned that if first devise should fail, the trustees should apply such proceeds to the education of young men for the ministry; and the first object failing, the last becomes a valid permanent charity.

4. *Wills; Construction; Parties in Interest.*—A legatee under a will bequeathing to him the balance of money (meaning gold and silver coin and currency) of which testatrix dies possessed, after the payment of certain legacies, has no interest in the question of the validity or invalidity of a provision in a devise of real estate to trustees to use the income for a certain purpose as it in no wise affects his interests under the will.

APPEAL from Limestone Chancery Court.

Heard before Hon. W. T. Simpson.

Bill by John H. Hundley, executor of Mary Ann Walton, deceased, against James W. Woodruff and others, for the construction of the will of the deceased. From a decree construing the will, defendants appeal.

Item 14 of the will, discussed in this opinion, is as follows: "The balance of my real estate consists of the plantation, containing about 600 acres, known as the 'Oakwood Place,' and upon which is situated the family graveyard. I give and bequeath this land (with the exception of the graveyard, containing four acres) to John Hundley, G. W. Mitchell, and James Sloss, in trust to rent the same and apply the proceeds to such objects of charity and benevolence as the Presbytery of the State

of Alabama of the Cumberland Presbyterian Church may indicate or designate; and, should this devise fail, then the said trustees shall apply the proceeds to the maintenance and education of young men preparing for the ministry in the Cumberland Presbyterian Church, or in any other Protestant church, said young men to be selected by the said trustees or any two of them. I add to this legacy the residum of my estate."

As qualifying this, item 15 is as follows: "Out of the rents of Oakwood, I will and desire that said graveyard be kept up in its fencing and so as to inclose said four acres decently, and to keep the right of way in good condition and repair."

J. E. HORTON, JR., and EARLE PETTUS, for appellant McDonald. CABANISS & WILLINGHAM, and CABANISS & WEAKLEY, for appellants, minor children. R. W, WALKER, MILTON HUMES, and W. T. SANDERS, for appellant Woodroof. No briefs came to the Reporter.

THOMAS C. McCLELLAN, for appellee trustees; and OSCAR R. HUNDLEY, and HARRIS & EYSTER, for appellee Hundley. No brief came to the Reporter.

TYSON, J.—This appeal involves only two questions: One, relating to the effect of the lapse of certain legacies; the other, touching the validity of a charity. The eleventh clause of the will of the testatrix is as follows: "All the balance of the money now on hand, and of which I die possessed, after the payment of my just debts and the legacies mentioned herein, I give and bequeath to Walton McDonald, son of J. N. and Maggie McDonald, of Williamson county, Tennessee. By 'money' herein I mean gold and silver coin and currency, wherever deposited or situated." Among the legacies were two of $1,000 each to persons who died during the life of the testatrix. The chancellor, in construing the will, held that these legacies fell into the general residuum. This ruling is assigned as error by appellant McDonald.

Of course, the lapse of legacies which are primarily a

19.

charge on the "money" of the testatrix will lessen that much such charges, and in that way will give to the legatee entitled to the balance of the money the benefit of the lapse; but the lapsed legacies themselves, as a charge upon the whole of the testatrix's property, ceased to be of any effect whatever, precisely as if they had never been inserted in the will, and therefore ceased to be a charge against the residuum of the estate. The testatrix, is appears, was at the date of her will about to undergo a dangerous surgical operation, and immediate death was contemplated as a possible result. In that view the testatrix uses in this clause, in reference to her money, the words, "now on hand." At the same time she contemplated that she might not die, and that consequently the words "now on hand" might create difficulty in their application to conditions existing at her death in after years. Therefore she made the clause ambulatory and applicable to her death at any time by the additional words "and of which I die possessed." There seems to be no difficulty whatever about the construction. The bequest only applies to the money "possessed" at her death, and only covers such money as is left after paying the valid charges put upon such money, and therefore the legatee of "the balance" only has the indirect advantage of lapsed legacies by the cancellation of such legacies as charges.

The testatrix by the fourteenth clause of her will gave a certain real property and the residue of her estate to three trustees for a charity which was held invalid by the lower court, and provided an alternative bequest for a different charity "should this (the first) devise fail." The court held the alternative devise valid, and this ruling is assigned as error. The devise is that "the said trustees shall apply the proceeds (increase of the property) to the maintenance and education of young men preparing for the ministry of the Cumberland Presbyterian Church, or in any other Protestant church; said young men to be selectetd by said trustees, or any two of them." By the next clause (15) it is provided that a designated family graveyard of four acres, included in the tract of

land devised by the fourteenth clause, but excluded from the devise itself, shall be inclosed and kept up out of the rents of the land devoted to the charity. There being no assignment of error relating to the primary scheme of charity, we will consider only the objections to the alternative scheme above set out.

It is insisted that the testatrix did not intend or declare a permanent charity, but at most only a devotion of the income of the property to the maintenance and education of young men preparing for the ministrty during the time they could be selected by the named trustees or any two of them. This objection would hardly be insisted on, except for the provision that the persons to be maintained and educated are "to be selected by said trustees, or any two of them." The argument is that a personal confidence was reposed in the named trustees, and therefore it was necessarily a temporary provision, operating only during the possibility of its exercise, and not existing at all after the death of the trustees. And the case of *Fontain v. Ravenel,* 17 How. 369, 15 L. Ed. 80, is relied on to support the contention. The provision giving the trustees, or any two of them, power to select the young men preparing for the ministry of the Cumberland Presebyterian Church, or for the ministry of any Protestant church, as recipients of the charity, is a power which would, by the law and without respect to the special provision of the will, appertain to the office of trustee. The property is given to the trustees for the defined charitable trust of applying the income "to the maintenance of young men preparing for the ministry" of the Cumberland Presebyterian Church, or any Protestant church. If all the trustees had died, the trust would not have failed. And the fact that the power of selection was expressly vested in the trustees is immaterial, as it would appertain by implication to the office, whether filed by appointees of the court or by selection of the testatrix. There may be said to be no real interregnum in the office of any trust.

"Public charities indefinite in terms are necessarily limited in their administration by the amount of the foundation (or funds available). Where the founder

[Woodroof, *et al.* v. Hundley.]

does not provide a rule or order of selection, there is, therefore, in every public charity a necessary power of selection of beneficiaries in the trustees."—*Dodge v. Williams*, 46 Wis. 70, 98, 1 N. W. 92, 50 N. W. 1103; *Russell v. Allen*, 107 U. S. 163, 167, 2 Sup. Ct. 327, 27 L. Ed. 397; *Howe v. Wilson*, 60 Am. Rep. 226, and note; *Hesketh v. Murphy*, 35 N. J. Eq. 23; *St. James Orphan Asylum v. Shelby*, 60 Neb. 796, 84 N. W. 273, 83 Am. St. Rep. 553; *Bullard v. Chandler*, 149 Mass. 532, 541, 21 N. E. 951, 5 L. R. A. 104; 2 Perry on Trusts, §§ 721, 731, 732; 2 Pom. Eq. §§ 1025, 1026; 6 Cyc. pp. 938-940. The case of *Fontain v. Ravenel*, 17 How. 369, 15 L. Ed. 80, and kindred cases, have no application here. In that case there was only a power given to the executors, or the survivor of them, after the death of a life tenant (the wife) to dispose of or appoint the property "for the use of such charitable institution in Pennsylvania and South Carolina as they or he may deem most beneficial to mankind, etc." It is plain that the charity itself was here wholly unde termined and was left to the personal confidence and discretion of the executors, and, the power never having been exercised and being impossible of execution, the devise of necessity failed, without an exercise of the doctrine of *cy pres*. which has never prevailed in this country. In the case at bar the particular charity is defined and designated with all the certainty required by law, and it is only the administrative detail of the selection of the individual object of the class to be educated, etc., which is left to the trustees. This is an uncertainty which appertains to every scheme of charity of the kind. No will individualizes the foundlings who are to be nourished, or the sick who are to be nursed, or the existing or nonexisting young men who are to be aided in a case of this character. The fact, then, that the trust empowered the trustees to select the beneficiaries, is no indication whatever that the charity was limited to their lifetime. There can be no question, on a consideration of the whole will, including the first scheme of charity (*Burrill v. Boardman*, 43 N. Y. 260, 3 Am. Rep. 694), that the testatrix intended the alternative provision under consideration as permanent.

[Woodroof, *et al.* v. Hundley.]

It is further insisted that, if the testatrix intended a permanent charity, it cannot be carried into effect, because it was coupled with a discretion in trustees, who are dead, to select the particular objects who are to receive the benefit of the provision, and because the fifteenth clause of the will provides that an undefinable part of the income is to be subtracted in perpetuity to care for the graveyard. The first objection has already been answered. The selection of the particular objects of the designated class to be benefitted is a mere administrative detail, not involving the essence of the charity, and belongs to the office of trustee, unless specially otherwise provided, and, when not specially otherwise provided, will be exercised by the court or attached to the office of trustee on failure of the particular plan.—*Bullard v. Chandler,* and other authorities cited supra. And the fact that there is a valid or invalid provision in the fifteenth clause of the will relating to the income of the property devoted to the charity is wholly immaterial. If the provision is valid, it will simply reduce the income of the property to the extent of the charges for keeping up the graveyard. If, on the other hand, it is invalid, it can have no effect. The appellants can therefore in no event be prejudiced by the fifteenth clause of the will, whether it is a valid or invalid provision.

We find no error in the decree of the lower court of which the appellants can complain, and it must be affirmed.

McClellan, C. J., and Simpson, and Anderson, JJ., concur.