259 So.2d 258

**Grady M. BILES et al.**

v.

**R. C. MARTIN, and Thomas S. Woodroof as Executors of the Estate of F. B. Biles.**

**8 Div. 461.**

Supreme Court of Alabama.

March 16, 1972.

---

Bruce Sherrill, Guardian at litem, Athens, for appellants.

Woodroof & Woodroof, Athens, J. Gilmer Blackburn, Decatur, for appellees.

MADDOX, Justice.

This is a suit for a declaratory judgment to interpret the Last Will and Testament of F. B. Biles of Athens, Alabama, who died on March 28, 1969. Under his Will, Biles provided that his residuary estate would be disposed of as follows:

"Item Ten: All of the rest and residue of my property of every kind and description, be same real, personal or mixed, I hereby give, devise and bequeath unto such charitable organization, or charitable organizations, to be determined by the sole and uncontrolled discretion of my Executors, hereinafter named, my intention being that I want my Executors, hereinafter named, to have full power and authority to give the residue of my estate to such charitable organization, or charitable organizations, as they might select. In re-

ferring to charitable organizations same shall include, but shall not be limited to, all religious, charitable, scientific, literary or educational organizations."

Appellees R. C. Martin and Thomas S. Woodroof were named in the Will as Executors and were duly appointed as Executors. The Executors requested a ruling from the Internal Revenue Service of the United States as to the deductibility for Federal Estate Tax purposes of the transfer to charitable organizations under the provisions of Item Ten of the Will. The IRS, in a letter ruling, stated that a deduction would not be allowed, basing its determination upon an interpretation of Alabama law which it claimed would make the bequest in Item Ten void.

The Executors filed in the Probate Court of Limestone County, prior to filing the Federal Estate Tax Return, an instrument dated December 9, 1969, wherein the Executors absolutely, unqualifiedly and irrevocably disclaimed any right under the Will to appoint any portion of the residuary estate to any charitable organization other than one recognized as being entitled to an estate tax deduction.

The Executors disagreed with the ruling of IRS and appointed the residuary estate to Athens College, Athens Bible School, Athens-Limestone Hospital, Tennessee Valley Council Boy Scouts, Alabama Sheriffs Boys' Ranch, Lurleen B. Wallace Memorial Cancer Hospital, and Limestone County Girl Scouts.

This action was filed for the purpose of obtaining an interpretation of Item Ten of the Will. The charitable organizations above-named, the known heirs of F. B. Biles, and the United States were made parties. The United States removed the action to Federal District Court, got dismissed as a party, and the cause was then remanded to the Circuit Court for further proceedings. There is no dispute as to the facts in this case and they have been agreed to by the parties, the substance of which are as follows:

Biles was a resident of Athens, and owned property in Limestone County. His Will was duly admitted to probate on April 23, 1969. Alex Markowitz was named Co-executor under the Will, but did not seek an appointment. Biles was an unmarried man, and he left no child, or a descendant of any child. Biles had a half-brother, whose name was O. L. Biles, and who predeceased him. O. L. Biles has surviving one son, Grady M. Biles, who resides in Tennessee. Biles also had a half-brother, whose name was Polk Biles, who predeceased him. Polk Biles has surviving a daughter, Mattie Lee Biles Donelson, who resides in Texas. Grady M. Biles and Mattie Lee Biles Donelson were the next-of-kin of F. B. Biles. It is unknown whether the said F. B. Biles had any other heirs at law, or whether such heirs were of legal age.

The parties agreed that the issues presented were as follows:

"(A) Whether the bequest to charity of the residue estate of F. B. Biles was void under the laws of the State of Alabama?

"(B) Whether the bequest of the residuary estate of F. B. Biles was a bequest or devise directly to the charitable organizations selected by the Executors or a bequest to the individual Executors in Trust?

"(C) Whether in view of the disclaimer filed by the Executors in the Probate Court of Limestone County, the Executors may appoint the Residue Estate only to charitable organizations which would entitle the Estate to an Estate Tax Deduction?"

The Court decreed that the Executors were required to transfer the residuary estate to such charitable organizations as they should select and that the residuary transfer was not void under Alabama law. The Court also determined that the bequest under Item Ten of the Will was directly to the charitable organizations selected by the named executors and not to

the individual Executors as trustees. The Court further decreed that the Executors, by filing the disclaimer, could only select charitable organizations which would entitle the estate to an estate tax deduction.

Appellant, Bruce Sherrill, as Guardian ad litem for the unknown and unascertained heirs-at-law and next-of-kin of F. B. Biles, deceased, together with unknown and unascertained persons who may be under some legal disability and may appear to have some interest in the estate of F. B. Biles, claims the Court erroneously held that the bequest to charity of the residuary estate was not void under the laws of the State of Alabama.

Appellant concedes that the courts of most states would impose a trust upon a bequest to "such charitable organizations as my executor may select." Scott, The Law of Trusts, § 397 (3rd Ed., 1967); Minot v. Baker, 147 Mass. 348, 17 N.E. 839 (1888).

But appellant claims Alabama has adopted a minority position in the administration of charitable trusts and that the bequest made under Item Ten is void because the Executors are given an unbridled discretion to devote the fund, without any restriction or limitation, as to individual, class, condition, or location. Appellant relies almost solely on this court's opinion in Crim et al. v. Williamson et al., 180 Ala. 179, 60 So. 293 (1912), a split-decision, with three justices dissenting.

In *Crim*, the Item of the Will being interpreted read as follows:

"The residue of my property, consisting of whatever money I may have in bank at the date of my death, and the above described real estate, I give and bequeath to Anniston Lodge No. 443, Ancient Free and Accepted Masons, in trust for charitable purposes, as hereinafter set forth. Said real estate must be kept intact, and not be sold, and known as the W. L. and Nancy M. Crim Real Estate Memorial. The charities to be dispensed by my trustees hereinafter named, representing my said estate, and the said Masonic lodge, charities to Masonic widows and orphans preferred; but my trustees, hereinafter appointed, are not restricted to such charities, but shall exercise a wise discretion in aiding worthy objects of charity. In the event Mallory Gothard should be living and can be found, I direct that he shall share in such distribution of charities as may be found necessary."

The majority of the Court said:

"The majority of the court are of the opinion that clause 3 of the will · . . . is void. While it expresses a preference for widows and orphans of Masons, it does not confine the bequest to this clause, but gives the trustees an unbridled discretion to devote the fund to 'worthy objects of charity,' thus vesting in them the sole power to determine who or what may be worthy objects of charity and without restriction or limitation as to individual, class, condition, or location."

Subsequent decisions of this court seem to limit the holding in *Crim* to cases where charitable purposes are mingled with other purposes.

In Tarver et al. v. Weaver et al., 221 Ala. 663, 130 So. 209 (1930), this court said:

"Appellants' contention that the charities to which the trust property is dedicated are not sufficiently defined is rested upon the holding of the court in Crim et al. v. Williamson, supra. The provisions of the will in that case were: 'The charities to be dispensed by my trustees hereinafter named, representing my said estate, and the said Masonic lodge, charities to Masonic widows and orphans preferred; *but my trustees, hereinafter appointed, are not restricted to such charities,* but shall exercise a *wise discretion in aiding worthy objects of charity.* In the event Mallory Gothard should be living and can be found, I direct that he shall share in such distribution of charities as may be found neces-

sary.' This was not a trust for charity generally, but was an effort to create a trust for a class not definitely defined. The court held this provision of the will void because it left the selection of the class to the ultimate discretion of the trustees. If it had been a bequest to charity generally, the result would probably have been different. Minot v. Baker, 147 Mass. 348, 17 N.E. 839, 9 Am.St. Rep. 713." In *Tarver*, supra, this Court said:

"If it had been a bequest to charity generally, the result would probably have been different."

The Court cited the leading case, Minot v. Baker, 147 Mass. 348, 17 N.E. 839, as authority for this statement. It is interesting to note that Justices Anderson and Sayre, who helped make the majority of the Court in *Crim*, concurred in the *Tarver* case which distinguished *Crim*, and cited Minot v. Baker approvingly. The language in Item Ten of the Will here is very similar to that used in Minot v. Baker.

The obvious intent of the testator here was to give his residuary estate to charity. He specified that the ultimate beneficiaries should be a *charitable* organization or *charitable organizations,* which in and of itself is a general class of beneficiaries.

■ Both before and after *Crim*, the law of this State is that charitable donations are exempted from the rules applicable to other trusts. It is not necessary to their validity that there should be a grantee or devisee capable of taking or holding by law, or that there should be a cestui que trust so definitely described as to enable a court of equity to execute the trust upon its ordinary principles. Williams v. Pearson, 38 Ala. 299 (1862), wherein this Court concluded:

"Accordingly, when an ascertainable object, recognized as charity, is designated by the donor, in general or collective terms,—as the poor of a given county or parish, or the clergymen of a particular denomination having charge of churches within a specified district, the gift or legacy will be upheld by a court of equity. Nor is it any objection to the validity of such a gift, that the donor has appointed no trustee, or that the trustee appointed is incapable of taking the legal interest. If the object of a charitable donation can be ascertained, the want of a trustee will be supplied by appointment by a court of equity. —Washburn v. Sewall, 9 Metc. 280; Winslow v. Cummings, 3 Cush. 365; Moore v. Moore, 4 Dana, 358–359; Shields v. Jolly, 1 Rich, Eq. 109; 2 Story's Eq. §§ 976, 1059; Willard's Eq. 424, 580."

■ Charitable trusts are especially favored in equity, and all reasonable intendments, consistent with the terms and purpose of the gift, will be made in support of their validity. Mastin v. First National Bank of Mobile, Inc., 278 Ala. 251, 177 So. 2d 808 (1965). A charitable trust will not be allowed to fail by reason of uncertainty as to the persons to be benefitted if there is someone appointed to make a selection and thereby render certain the beneficiaries who are to enjoy the donor's bounty. Johns v. Birmingham Trust & Savings Co., 205 Ala. 535, 88 So. 835 (1921).[1]

The conclusion we here reach in nowise depends upon the cy pres doctrine (one of construction, the reason or basis being to permit the main purpose of the donor of a charitable trust to be carried out as nearly as may be where it cannot be done to the letter).

In Tumlin v. Troy Bank & Trust Co., 258 Ala. 238, 61 So.2d 817 (1952), this Court said:

". . . But this Court has consistently held to the principle that a court of equity in administering a charitable trust has a right to vary the details of such administration so that the trust may be used for the beneficiaries which

[1]. Judge Sayre, who joined majority in *Crim*, wrote *Johns*.

are named or designated by description. It is wholly immaterial whether that power is called cy pres, as it is in some states, or approximation as it is in Alabama."

,  The intention of the testator is always the polar star in the construction of wills, and the cardinal rule is to ascertain the intention of the testator and give it effect if not prohibited by law. Mastin v. First National Bank of Mobile, supra. The unquestioned intention of the testator here was to give his residuary estate to a charitable organization or charitable organizations as selected by his executors.

The *court* was not called upon to make a selection (prerogative cy pres) which is not recognized. Tumlin v. Troy Bank & Trust Co., supra. There was no designated class or person which was not in existence when the testator died; therefore, judicial cy pres was inapplicable in this case.

It would appear that the testator's intention has been carried out with regard to Item Ten of the Will, and the judgment of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and LAWSON, MERRILL and HARWOOD, JJ., concur.